Revised February 5, 2003

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-41105

JOHN S. WHELAN; RJ WHELAN JR; MARY VIRGINIA WHELAN; ESTATE OF VIRGINIA ABNEY WHELAN; REGINAL WHELAN SKODA; MARGARET WHELAN HENSLEY; LYNN ABNEY LOMAX; JAMES K ABNEY, JR; KATHERINE L ABNEY; INEZ ELIZABETH ABNEY FURRH; ROBERT ABNEY PRICE; JANE ABNEY PRICE; BLANCH K ABNEY,

                    Plaintiffs-Appellees/Cross-Appellants,

                    VERSUS

WINCHESTER PRODUCTION COMPANY; WESTCHESTER GAS COMPANY; ESTATE OF SAM VAUGHAN; KIM VAUGHAN; AMY VAUGHAN, an individual; PHILLIP BALDWIN, JR; NEWTON W DORSETT; NEWIEL INC; LOUTEX PRODUCTION COMPANY,

                    Defendants-Appellants/Cross-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas

January 30, 2003

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

The district court dismissed on summary judgment Plaintiffs' civil Racketeer Influenced and Corrupt Organizations Act and common law fraud claims, the latter without prejudice. Defendants appeal requesting dismissal of Plaintiffs' common law fraud claim with

prejudice. Plaintiffs appeal the dismissal of their RICO claims. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The defendants are: Winchester Production Company, its parent Westchester Gas Company, the estate of San Vaughan, Kim Vaughan, Amy Vaughan, Phillip Baldwin, Jr., and Newton Dorsett and his companies, Newiel, Inc. and Loutex Production Co. Sam Vaughan directed Winchester Production and Westchester Gas until his death in 1989 and is succeeded in that role by his daughter Kim Vaughan. Amy Vaughan, also the daughter of Sam Vaughan, receives income from Winchester and Westchester. Phillip Baldwin is an attorney for Winchester and Westchester.[1] Newton Dorsett purchased from Winchester the well bore of one of the wells at issue, and in a transaction dealing with another property, obtained a mineral lease from Winchester. The plaintiffs, John S. Whelan, et al. ("Whelan"), are royalty owners.

Whelan alleges that Sam Vaughan, and after his death Kim Vaughan, with the aid of Phillip Baldwin and Newton Dorsett, used employees of the corporate defendants to defraud Whelan of royalties. Beginning in 1987 and ending at some point between 1991 and 1993, Winchester employees engaged in the practice of reallocating production among gas wells. The purpose of the

---

[1] When necessary, we distinguish Winchester Production/Westchester Gas and its principals from Newton Dorsett and his companies by referring to the former as "the Winchester defendants" and the latter as "Dorsett".

2

reallocations is disputed; Defendants argue that the reallocations were temporary and were intended to take advantage of the best prices available, while Whelan contends that they were used to defraud royalty owners of payments. Kim Vaughan, who has served as president of Winchester Production and Westchester Gas since 1990, learned in connection with another lawsuit that reports reflecting reallocated production, rather than actual production, had been filed with the Texas Railroad Commission and Comptroller of Public Accounts. Kim Vaughan hired an accounting firm to prepare corrected reports for submission to the Railroad Commission and the Comptroller and to determine the amount owing to royalty owners who had been underpaid as a result of the reallocations. Winchester paid additional royalties based on the accountants' report. Whelan, wishing to determine for itself the correct production allocations, declined to accept the payment amounts as determined by Winchester's accountants.

Whelan alleges also that the Winchester defendants and Dorsett cooperated to fraudulently obtain mineral interests belonging to Whelan, further depriving it of its rightful share of royalties. Dorsett purchased a well bore from the Winchester defendants and obtained an assignment from Texaco to produce oil from the well. Whelan contends that the assignment was invalid because Whelan, not Texaco, owned the mineral rights. Dorsett also obtained a mineral lease from Bank One, trustee of the Virginia Abney Whelan Trust. Whelan alleges that Dorsett knew the lease to be invalid. Dorsett

3

later obtained leases directly from the Whelan heirs and, in connection with the same property, obtained from Winchester another mineral lease.

Whelan brought a civil RICO action against the Winchester defendants. The case's lengthy procedural history includes Whelan's filing of two RICO case statements and two amended complaints, the first of which added Newton Dorsett and his companies as defendants. The magistrate judge recommended, and the district court adopted and approved, summary judgment for Defendants, finding that Whelan produced no evidence tending to demonstrate a RICO enterprise. The district court issued a final judgment dismissing all claims.

Eight days after the district court issued its final judgment, Whelan moved for a new trial and for reconsideration and amendment of the final judgment. Whelan argued in its motion for amendment that its second amended complaint contained state law claims never mentioned in the magistrate judge's report and recommendation. Whelan requested that the unadjudicated state law claims be dismissed without prejudice. The district court denied the new trial but granted the motion to amend, stating that Whelan's second amended complaint "may support a cause of action for common law fraud." Because Whelan's RICO claim had been the only federal claim, the court declined pendent jurisdiction and dismissed the common law fraud claim without prejudice.

Defendants moved for alteration or amendment of the amended

4

final judgment, arguing that Whelan had failed to state fraud with particularity as required by Federal Rule of Civil Procedure 9. The district court denied Defendants' motion, stating that it, having declined pendent jurisdiction, "did not intend to address the merits of the state law claim."

Whelan argues that the district court erred in finding that Whelan's evidence offered no support for the existence of an association-in-fact enterprise as required by RICO. Defendants contend that the district court erred in finding that the pleadings stated a claim for common law fraud and dismissing the claim without prejudice. We address these arguments in turn.

## II. SUMMARY JUDGMENT

### A. Standard of Review

We review the grant of summary judgment de novo, applying the same standard as would the district court. <u>Boston Old Colony Ins. Co. v. Tiner Associates, Inc.</u>, 288 F.3d 222, 227 (2002). Summary judgment is appropriate when the movant can demonstrate that the pleadings, depositions, affidavits, and other evidence available to the court establish no genuine issue of material fact. Fed. R. Civ. P. 56(c). Once the movant has met its burden, the nonmovant must demonstrate that there are fact issues warranting a trial. Fed. R. Civ. P. 56(e). In opposing summary judgment, the nonmovant may not rely on conclusory allegations in his pleadings; rather, he must set forth sufficient evidence supporting a claimed factual

5

dispute to require a fact finder to resolve the parties' differing versions of the truth at trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510 (1986). If the nonmovant fails to make a showing on an element for which he bears the burden of proof, the movant is entitled to judgment as a matter of law. <u>Celotex Corp. v. Cattret</u>, 477 U.S. 317, 322 (1986). The evidence must be viewed in a light most favorable to the nonmovant. <u>Walker v. Thompson</u>, 214 F.3d 615, 624 (5th Cir. 2000).

B. Whelan's RICO claims

Whelan asserts that Defendants violated all four subsections of 18 U.S.C. § 1962.[2] Elements common to all four are: (1) a person[3] who engages in (2) a pattern[4] of racketeering activity[5] (3)

---

[2] Reduced to plain English by this Court in <u>In re Burzynski</u>, 989 F.2d 733, 741 (5th Cir. 1993), ths subsections state:
 (a) a person who has received income from a pattern of racketeering cannot invest that income in an enterprise.
 (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering.
 (c) a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering.
 (d) a person cannot conspire to violate subsections (a), (b), or (c).

[3] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[4] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[5] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

connected to the acquisition, establishment, conduct or control of an enterprise. Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 242 (5th Cir. 1988), cert denied, 489 U.S. 1079, 109 S.Ct. 1531 (1989).

Central to the district court's grant of summary judgment was its conclusion that Whelan failed to demonstrate an enterprise. An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct. United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528 (1981). The enterprise may be a legal entity or "any union or group of individuals *associated in fact* although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). The plaintiff alleging an association-in-fact enterprise must adduce evidence demonstrating "'an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit.'" Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 439-40 (1987) (quoting Turkette, 452 U.S. at 583, 101 S. Ct. at 2528). The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages. Id. at 441.

For purposes of § 1962(c), which prohibits the conduct of an enterprise's affairs through a pattern of racketeering activity, the plaintiff must demonstrate not only that the enterprise is distinct from the series of predicate acts constituting

7

racketeering activity, but also that the RICO "person" who commits the predicate acts is distinct from the enterprise. Bishop v. Corbett Marine Ways, Inc., 802 F.2d 122, 123 (5th Cir. 1996). It is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business. Elliot v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989). That officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation. Id.; see also Atkinson, 808 F.2d at 441.

Whelan alleged that Defendants were an association in fact consisting of "the corporate Defendants, Sam Vaughan, Kim Vaughan, Amy Vaughan, Phillip Baldwin, Jr., both individually and as executor of the estate of Sam Vaughan, and Newton Dorsett."[6] Whelan argues that the enterprise's purpose to defraud the royalty owners of their payments is distinct from the predicate acts of mail and wire fraud, which were merely the means to accomplish the ultimate purpose.

Whelan's § 1962(c) claim cannot succeed because Whelan has not demonstrated an enterprise as required by that subsection. First, Whelan offers no competent evidence other than that of predicate acts to demonstrate an association between Newton Dorsett and the Winchester defendants. Dorsett's purchase of a well bore from

_____

[6] RICO Case Statement at 10.

8

Winchester and acquisition of a mineral lease from Winchester serve to connect him with the Winchester defendants in the commission of predicate acts, but fail to demonstrate the existence of an association separate from the predicate acts. Testimony from Whelan's expert witness, Kenneth Frazier, that Dorsett and Sam Vaughan had been in "several deals together"[7] is speculation; Frazier went on to state that he had no contact with Winchester during the period in which Sam Vaughan and Dorsett are supposed to have been associated.[8]

Even if we accepted that Whelan's evidence demonstrated an association beyond the commission of predicate acts, Whelan is unable to demonstrate the association's continuity. The concept of continuity has been incorporated into the enterprise requirement in order to control the scope of RICO. Delta Truck, 855 F.2d at 243. An enterprise that "briefly flourished and faded" will not suffice; Whelan must adduce evidence showing that the enterprise functioned as a continuing unit. Landry v. Airline Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 433 (5th Cir. 1990). The few transactions between Dorsett and the Winchester defendants supported by summary judgment evidence are insufficient to demonstrate the required continuity.

Putting aside the association between Dorsett and the

_____

[7] Deposition of Kenneth Frazier at 34.

[8] Id.

Winchester defendants, Whelan urges us to consider the Winchester defendants alone as constituting an enterprise. The predicate acts committed by the Winchester defendants, such as mailing false production reports, were committed by agents and officers of Winchester in the ordinary course of business. No summary judgment evidence offered by Whelan demonstrates an association beyond one in the course of employment by Winchester. Company officers and employees not associated other than through the activities of the company do not constitute an enterprise for purposes of § 1962(c).

For the remaining subsections of § 1962, we consider the Winchester defendants alone as constituting an enterprise, but conclude nonetheless that Whelan's evidence reveals no triable fact issues. Whelan offers only conclusory allegations in support of claims that the Winchester defendants violated § 1962(a) by using funds from racketeering to invest in an enterprise or violated § 1962(b) by acquiring or increasing their interests in an enterprise through racketeering. Moreover, Whelan points to no evidence demonstrating that § 1962(a) or (b) violations were the proximate cause of damages suffered by Whelan. See St. Paul Mercury Ins. Co. v Williamson, 224 F.3d 425, 443 (5th Cir. 2000); Crowe v. Henry, 43 F.3d 198, 205 (5th Cir. 1995). Finally, Whelan offers only conclusory allegations that Defendants violated §1962(d) by conspiring to commit RICO violations. Conclusory allegations are insufficient to defeat a properly supported motion for summary judgment. Fed. R. Civ. P. 56(e). We conclude that the district

10

court was correct to grant summary judgment dismissing Whelan's RICO claim.

## II. WHELAN'S STATE LAW CLAIM

Defendants argue that the district court abused its discretion in dismissing Whelan's common law fraud claim without prejudice. Defendants contend that Whelan's first statement of common law fraud occurred with its request for amendment of a final judgment, and neither Defendants nor the court was on notice of any state law claim. Defendants maintain that Whelan, having named RICO as the basis for its recovery, should be limited to RICO.

A motion to alter or amend a final judgment, when filed within ten days from the date the original judgment issues, is governed by Federal Rule of Civil Procedure 59(e). Bohlin v. Banning Co., Inc., 6 F.3d 350, 353 (5th Cir. 1993). The decision by the district court to amend its judgment is reviewed for abuse of discretion and need only be reasonable. Id.

The district court amended its judgment because it concluded Whelan's second amended complaint "might state a claim for common law fraud." We accept the court's refusal to evaluate the complaint under the Rule 9 mandate of particularity, which would apply only if the claim were being adjudicated in federal court. Reviewing the decision to amend, we ask only whether the court reasonably could conclude that the complaint stated a pendent claim for common law fraud. In assessing whether the court was

11

reasonable, we look to Rule 8 of the Federal Rules of Civil Procedure.

Pleadings must be construed "as to do substantial justice." Fed. R. Civ. P. 8(f). The Rules require only "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).

Our reading of the complaint satisfies us that the district court did not abuse its discretion in amending its judgment. We do not intend to say that allegations sufficient to support pendent claims for common law fraud inhere in every RICO claim. Neither is our ruling based on the adequacy of Whelan's allegations in stating a claim for fraud; we leave to the state court the task of evaluating the substance of Whelan's fraud complaint. Our review of the complaint is for the limited purpose of evaluating whether the district court could reasonably have concluded that the complaint gave Defendants fair notice of what Whelan's claims were. Because we conclude that it could, we find no abuse of discretion.

## III. CONCLUSION

Whelan's evidence demonstrates no material fact issue regarding its RICO claims; therefore, summary judgment dismissing its RICO claim was proper. The district court's amendment of its judgment was not an abuse of discretion. We affirm the amended

12

judgment of the district court.


AFFIRMED