David M. Feldman, Robert L. Cambrice, City of Houston Legal Department, Jonathan Griffin Brush, Richard Alan Morris, Rogers, Morris & Grover, L.L.P., Houston, TX, for Defendant–Appellant.

Before JOLLY and HAYNES, Circuit Judges, and RODRIGUEZ *, District Judge.

PER CURIAM: **

George Rodriguez sued the City of Houston under 42 U.S.C. § 1983 after his conviction for rape and kidnapping was set aside on habeas review as a result of demonstrably false serology evidence presented by the chief of the City of Houston crime lab's serology section. Following a lengthy jury trial, the district court entered judgment on the jury verdict for Rodriguez. At the time judgment was entered, the state of the law on municipal liability for wrongfully proffered (or withheld) evidence in our circuit could be found in the affirmance by an equally divided en banc court in *Thompson v. Connick,* 578 F.3d 293 (5th Cir.2009). Prior to the en banc affirmance, a panel of this court had likewise affirmed the liability of the city in that case. *Thompson v. Connick,* 553 F.3d 836 (5th Cir.2008). After this case was on appeal to our court, the United States Supreme Court granted certiorari in *Connick v. Thompson,* — U.S. —, 130 S.Ct. 1880, 176 L.Ed.2d 399 (2010), and we stayed this appeal pending the Supreme Court's decision in that case. Thereafter, the Court reversed our court in *Connick v. Thompson,* — U.S. —, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011).

We conclude that the interests of justice counsel in favor of allowing the district court in the first instance to consider that case and apply it as appropriate to the extensive facts and evidence developed in the lengthy trial in this case. Accordingly, without determining the merits at this time, we VACATE the district court's judgment and REMAND for consideration in light of *Connick. See Sabala v. Western Gillette, Inc.,* 559 F.2d 282, 283 (5th Cir.1977); *see also Elizondo v. Parks,* 254 Fed.Appx. 329, 332 (5th Cir.2007) (unpublished) (vacating the district court's order denying qualified immunity and remanding for reconsideration in light of *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)).

**ISYSTEMS, Plaintiff–Appellant**

v.

**SPARK NETWORKS, LIMITED; Spark Networks, Incorporated, Defendants–Appellees.**

No. 10–10905
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 13, 2011.

* District Judge of the Western District of Texas, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Gary N. Schepps, Schepps Law Offices, Dallas, TX, for Plaintiff–Appellant.

David Wesley Salton, Esq., Porter & Hedges, L.L.P., Houston, TX, Peter Haessly Anderson, Chamblee & Ryan, P.C., Dallas, TX, for Defendants–Appellees.

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM: *

Plaintiff–Appellant ISystems appeals the dismissal of its action for damages, an injunction, and declaratory relief for violations of the Anticybersquatting Consumer Protection Act ("ACPA"),[1] 15 U.S.C. § 1114(2)(D)(iv)–(v), and civil damages for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and the denial of its request for leave to amend the First Amended Complaint. We affirm.

#### FACTUAL AND PROCEDURAL BACKGROUND

Spark Networks, Incorporated ("Spark Inc.") is the parent company of Spark Networks, Limited ("Spark Ltd.") (collectively "Spark defendants"). Spark Ltd. owns the internet domain name "jdate.com," and on January 16, 2001, registered the mark "JDate," namely for "providing a website for facilitating the introduction of individuals." ISystems markets its Julian date computation software through the internet using the domain name "jdate.net," which it purchased on May 21, 2001. It also allows an organization called the Jewish Dating Network to use a sub-domain of its website to provide non-profit matchmaking-related services and dating resources.

In 2003 Spark Ltd., through counsel, requested that ISystems transfer to it the domain name "jdate.net," on the ground that it was likely to cause confusion regarding Spark Ltd.'s registered "JDate" mark and "jdate.com" website. ISystems refused. On May 19, 2008, Spark Ltd. submitted a complaint to the National Arbitration Forum ("NAF") pursuant to the Uniform Domain Name Dispute Resolu-

---

* Pursuant to 5TH CIR R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. The ACPA, enacted in November 1999, amended the Lanham Act, 15 U.S.C. § 1111–1128, to create a civil action for damages and injunctive relief against cybersquatters.

tion Policy ("UDRP").[2] After considering Spark Ltd.'s Complaint, ISystems' Response, and the submitted evidence, the arbitrator concluded that (1) the "jdate.net" domain name "is identical to a registered trademark in which [Spark Ltd.] has rights"; (2) "there is no evidence that [The Jewish Dating Network] business has been operating without knowledge by [ISystems]"; and (3) ISystems "has registered and continues to use the disputed domain name in bad faith." Pursuant to the arbitrator's order, the Internet Corporation for Assigned Names and Numbers ("ICANN") transferred the "jdate.net" domain name from ISystems to Spark Ltd.

On July 11, 2008, ISystems filed a complaint against the Spark defendants in federal district court. ISystems alleged that the Spark defendants' efforts resulting in the transfer of the "jdate.net" domain name violated RICO, 18 U.S.C. § 1962(c), and the ACPA, 15 U.S.C. § 1114(2)(D)(iv)–(v). The district court granted the Spark defendants' unopposed motion to dismiss in an order on June 10, 2009, which it vacated upon ISystems' motion, and re-granted again in a later order. ISystems then filed another motion to vacate the order, and requested leave to amend its Complaint, which the district court granted. Spark defendants then moved to dismiss ISystems' First Amended Complaint, which the district court granted with prejudice. The district court denied ISystems' subsequent motion to vacate the judgment and request for leave to amend the First Amended Complaint. ISystems appealed.

## STANDARD OF REVIEW

"A district court's grant of a motion to dismiss is reviewed de novo, using the same standard as the district court." *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 217 (5th Cir.2009). All factual allegations pled in the complaint must be taken as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).[3]

## ANALYSIS

### 1. ACPA

ISystems first claims that the Spark defendants abused the NAF procedure to obtain the "jdate.net" domain name, in violation of § 1114(2)(D)(iv). Section 1114(2)(D)(iv) of the ACPA provides that if a registrar transfers a domain name "based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any dam-

2. ISystems agreed to follow the UDRP in its Registration Agreement with Stargate Holdings Corporation, the registrar of its domain name.

3. We reject ISystems' argument that the court must treat the Spark defendants' motion as one for summary judgment under Federal Rule of Civil Procedure 12(c) because Spark defendants rely on attachments to their mo-

tion to dismiss. ISystems' claims are in large part based on these documents, and "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000) (internal quotation marks omitted).

ages." This subsection thus " 'protects the rights of domain name registrants against overreaching trademark owners.' " *Sallen v. Corinthians Licenciamentos LTDA,* 273 F.3d 14, 29 (1st Cir.2001) (quoting H.R. Conf. Rep. No. 106–464, at 117 (1999)).

■ ISystems' allegations that Spark Ltd. misrepresented that it had a trademark on "JDate," rather than a service mark, and that it blacked out portions of the "jdate.net" web page images in its submissions to NAF, do not satisfy § 1114(2)(D)(iv). First, the ACPA does not distinguish between a service mark and a trademark with regard to the issue of dilution. The subsection refers generally to a dilution of a "mark." The definitions section of the Lanham Act provides that "[t]he term 'mark' includes any trademark [or] service mark." 15 U.S.C. § 1127. Next, the blacking out of text in the attachments to Spark Ltd.'s NAF complaint does not constitute a misrepresentation, as ISystems does not allege that Spark Ltd. disguised that it selected only some text from the website. ISystems was free to provide NAF a copy of the website without any blacked out text. ISystems thus fails to establish a claim under § 1114(2)(D)(iv).

■ ISystems also brings a claim requesting "[a]n order pursuant to 15 U.S.C. § 1114(2)(D)(v) establishing that Plaintiff's registration of the domain name is not unlawful." Section 1114(2)(D)(v) of the ACPA "provide[s] registrants ... with an affirmative cause of action to recover domain names lost in UDRP proceedings." *Sallen,* 273 F.3d at 27. "A domain name registrant whose domain name has been ... transferred under a policy ... may, upon notice to the mark owner, file a civil

action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act." 15 U.S.C. § 1114(2)(D)(v). ISystems alleges that its use of the domain name was not unlawful pursuant to its UDRP. *See* 15 U.S.C. § 1114(2)(D)(ii)(II) (describing action for transferring a domain name "that is identical to, confusingly similar to, or dilutive of another's mark" in the implementation of a reasonable policy by a registrar). According to the NAF Decision, the UDRP required the Spark defendants to show three elements: "(1) the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights; (2) the Respondent has no rights or legitimate interests in respect of the domain name; and (3) the domain name has been registered and is being used in bad faith." ISystems does not dispute the first two elements, but contends that it did not register the domain name in bad faith as it did not intend to and did not profit from any services relating to online dating, the subject of Spark Ltd.'s service mark.[4] But, this claim alone is insufficient to establish that ISystems did not register or use the mark in bad faith. The fact that its dating service was non-profit does not eliminate the possibility that ISystems earned revenue from the site due to its similarity to "jdate.com." ISystems' failure to allege any other facts showing lack of bad faith are fatal to its claim.

## 2. RICO

■ISystems fails to allege facts that could establish that the Spark defendants violated RICO, 18 U.S.C. § 1962(c), by

---

4. Contrary to Spark defendants' argument, establishing irreparable injury or inadequacy of remedies at law is not an element of a claim under § 1114(2)(D)(v), and thus ISys-tems' failure to allege facts sufficient to satisfy the requirements for an injunction is irrelevant.

seeking and securing the transfer of the jdate.net domain name.

The purpose of RICO is "to protect legitimate enterprises from the influence of organized crime." 70 A.L.R. Fed. 538, 2a. Section 1962(c) provides that:

it shall be unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). In other words, "a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering." *In re Burzynski*, 989 F.2d 733, 741 (5th Cir.1993). "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (U.S.2001) (holding employee acting within scope of duty can serve as RICO person and his employer corporation as RICO enterprise).

■ ISystems fails to connect Spark Inc., the RICO "person," to a distinct RICO "enterprise."[5] ISystems argues that Spark Ltd., Spark Inc.'s wholly owned subsidiary, is a RICO "enterprise" because under *Cedric Kushner Promotions, Ltd.*, a formal separation such as incorporation is a sufficient distinction between the RICO "enterprise" and "person." 533 U.S. at 163, 121 S.Ct. 2087. *Cedric Kushner Pro-*

*motions, Ltd.*, involved an employee (the RICO "person") illegally conducting the affairs of the corporation (the RICO "enterprise") and specifically did not address other scenarios. *See id.* (avoiding discussion of a scenario where "a corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise'" and noting "[i]t is less natural to speak of a corporation as 'employed by' or 'associated with' this latter oddly constructed entity"). We have since held that in making out a distinction between a RICO "person" and a RICO "enterprise," "[i]t is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business. That officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir.2003). Here, ISystems pled that Spark Inc. controlled Spark Ltd. As in *Whelan*, ISystems fails to show that the alleged RICO "enterprise" exists because it does not allege that Spark Ltd. did anything beyond carrying out the regular business of Spark Inc. "[T]he distinctiveness requirement may not be avoided by alleging a RICO enterprise that consists merely of a corporation defendant associated with its own employees or agents carrying on the regular affairs of the defendants." *Khurana v. Innovative Health Care Sys.*, 130 F.3d 143, 155 (5th Cir.1997), *vacated on other grounds, Teel v. Khurana*, 525 U.S. 979, 119 S.Ct. 442, 142 L.Ed.2d 397 (1998).

■ Second, ISystems did not allege conduct that constitutes a pattern of racke-

---

5. RICO defines "enterprise" as "any individual, partnership, corporation, association, or other alleged legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

teering under RICO.[6] To establish a pattern of racketeering activity, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone, Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). "To establish continuity, plaintiffs must prove ... either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 122 (5th Cir.1996) (internal citations omitted). "[W]here alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Id.* at 123 (holding there was no pattern of racketeering activity where "[t]he alleged acts were all part of a single, lawful endeavor—namely the production of television news reports concerning a particular subject"). ISystems argues that over multiple years the Spark defendants have engaged in a continuing pattern of taking over domain names through wire fraud, in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, obstruction of commerce, in violation of 18 U.S.C. § 1951, and theft and attempted theft in violation Texas Penal Code §§ 15.01 & 31.03. The alleged fraudulent misrepresentations that Spark Ltd. made to ISystems in demand letters and to NAF in its Arbitration Complaint do not threaten long-term criminal activity, however.[7] Rather, these incidents constituted part of a single transaction to stop alleged infringement of the "JDate" mark.[8] Additionally, to the extent that the racketeering claim is based on Spark Ltd.'s demand letters, it must fail. To properly allege a claim under RICO based on fraud, ISystems must allege that it relied on the misrepresentations. *See Summit Properties Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 562 (5th Cir.2000) ("When civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is commonsense liability limitation."). Nowhere does the First Amended Complaint allege that ISystems relied on any of the supposed misrepresentations of the Spark defendants or their counsel. Rather, ISystems' admission in the First Amended Complaint that it was aware of the claimed misrepresentations is fatal to any attempt to allege fraud or RICO.

### 3. Denial of Request for Leave to Amend

■ "Except as authorized by the first sentence of Fed.R.Civ.P. 15(a) for one amendment before service of a responsive pleading, a complaint may be amended only by leave of the district court, and, while such leave is to be freely given when justice so requires, the decision is left to

---

6. Under RICO, a "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

7. This alleged fraud consisted of false representations that Spark Ltd. had registered the *trademark* "JDate," that such registration granted Spark the exclusive right to use "jdate" as part of a domain name, that other parties had registered the domain names "jdate.org" and "jdate.tv" in bad faith, and that Spark Ltd. had over eight million members.

8. ISystems' allegations in its First Amended Complaint that "Defendants' racketeering enterprise" was a "fraudulent pyramid investment scheme," and that they "engaged in a scheme to defraud investors through the sale of stock and investment interests" are overly conclusory and fall short of the minimum allegations required to make out a RICO claim.

the sound discretion of the district court and will only be reversed on appeal when that discretion has been abused." *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir.2003). The Spark defendants argue that ISystems never properly requested leave to amend. "We generally will not construe unelaborated, nested requests for amendment as motions to amend." *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d at 556. ISystems did not seek leave to amend its First Amended Complaint until it filed a motion for the district court to vacate its order granting the Spark defendants' second motion to dismiss. ISystems full request was, "to the extent this Court has dismissed the case because plaintiff did not label specific facts as being cited to specific elements of the law, plaintiff can certainly do so." Fatal to this request for leave to amend is the fact that the amendments sought were clearly futile and the request was unduly delayed. Though the district court did not explain its reason for denying the request, "[w]hen the reason for the denial is readily apparent [ ] a district court's failure to explain adequately the basis for its denial is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Cent. Laborers' Pension Fund*, 497 F.3d at 556 (quoting *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 426 (5th Cir.2004) (internal quotation omitted)). "Permissible reasons for denying a motion for leave to amend include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (U.S.1962)). As the complaint can be dismissed, for the reasons described above, regardless of ISystem's failure to connect facts to law, ISystems' proposed amendments were clearly futile. Moreover, the district court had already granted ISystems leave to amend the complaint once, and ISystems never explained why it had delayed seeking leave to amend the First Amended Complaint until the district court's grant of the second motion to dismiss. Accordingly, the district court acted within its discretion in denying ISystems leave to amend its First Amended Complaint.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.