# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-20359

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2015

Lyle W. Cayce
Clerk

MARK ZASTROW; HEIGHTS AUTOHAUS,

        Plaintiffs - Appellants

v.

HOUSTON AUTO IMPORTS GREENWAY LIMITED., doing business as
Mercedes-Benz of Houston Greenway; GEORGE A. KURISKY, JR.;
JOHNSON DELUCA KURISKY ; GOULD, P.C.,

        Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Plaintiffs-Appellants Mark Zastrow and his company Heights Autohaus (collectively, "Zastrow") appeal from the district court's grant of summary judgment on their claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and 42 U.S.C. §§ 1981 and 1982. For the reasons to be explained, we AFFIRM the district court's judgment on Zastrow's civil RICO claim and § 1982 claim, but VACATE its judgment on Zastrow's retaliation claim under § 1981 and REMAND the case for further proceedings consistent with this opinion.

I.

No. 14-20359

Zastrow owns Heights Autohaus, an automobile repair shop that performs mechanical repairs on German cars. Zastrow previously purchased all of his Mercedes-Benz parts from Houston Auto M. Imports, Ltd. d/b/a Mercedes-Benz of Houston Greenway ("Mercedes Greenway") at a 25% discount. In September of 2012, Zastrow's customer and attorney in this action, Reginald E. McKamie, Sr., brought Zastrow a 2006 Mercedes-Benz CLK ("CLK") to inspect. Unbeknownst to Zastrow at the time, the vehicle was the subject of a lawsuit against Mercedes Greenway that had been compelled to arbitration. The plaintiffs in that suit, Jesse Howard and JoAnn Jefferson-Howard (collectively, the "Howards"), also represented by McKamie, alleged that the CLK that Mercedes Greenway sold them was defective, and asserted claims against the dealership for fraud, negligence, breach of contract, breach of warranty, breach of fiduciary duty, credit discrimination, and racial discrimination and retaliation.

Zastrow inspected the CLK and discovered a number of mechanical problems with the vehicle. McKamie then asked Zastrow if he would testify as an expert witness in the Howards' lawsuit and Zastrow agreed. Zastrow's deposition was scheduled for January 8, 2013. Zastrow alleges that on January 7, 2013, he received a phone call from a Mercedes Greenway employee advising him not to sit for the deposition and warning him that he would regret it. Zastrow, however, appeared for the deposition and testified about his inspection of the vehicle. On January 9, 2013, the day after his deposition, Zastrow received a phone call from the same Mercedes Greenway employee, who then informed Zastrow that Mercedes Greenway would no longer sell parts to him.

The final arbitration hearing began the following week on January 14 and concluded on January 17, 2013. On January 14, Mercedes Greenway's

2

counsel, George A. Kurisky, Jr., mailed Zastrow a letter on behalf of Mercedes Greenway formally severing the dealership's business relationship with Zastrow because of his deposition testimony.[1]  Zastrow did not testify at the arbitration hearing and was unaware it was taking place.  His deposition testimony, however, was read to the arbitrator.

On January 23, 2013, McKamie sent the arbitrator a letter captioned "Notice of Retaliation Against Witness in Discrimination Suit and Intent to Sue."  On March 4, 2013, Zastrow filed the instant lawsuit naming as defendants Mercedes Greenway, Kurisky, and Kurisky's law firm, Johnson, Deluca, Kurisky & Gould, P.C.  Although Zastrow propounds a potpourri of legal theories, the gravamen of his complaint is that Mercedes Greenway threatened him to prevent him from testifying and then, with the assistance of Kurisky, retaliated against him by refusing to sell him auto parts after he gave his deposition.  The district court granted summary judgment to defendants on all claims, and Zastrow appealed the judgment as to his claims under RICO and 42 U.S.C. §§ 1981 and 1982.

## II.

We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court.  *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (per curiam).  Summary judgment is appropriate only if, interpreting all facts and drawing all reasonable inferences in favor of the non-moving party, "the

---

[1] The letter from Kurisky stated, in relevant part: "Pursuant to your expert testimony in the above-referenced matter, this correspondence will serve as notice that Mercedes-Benz of Houston Greenway is terminating their relationship with Heights Autohaus, effective immediately."

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where a summary judgment motion mounts challenges solely to the sufficiency of a plaintiff's pleadings, we review those challenges under a motion to dismiss standard. *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). Under this standard, "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (internal quotation marks omitted). "We accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (alteration and internal quotation marks omitted).

### III.

Zastrow first argues that the district court erred in granting summary judgment to defendants on his civil RICO claim. A civil plaintiff has standing to sue under RICO if he has been "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Zastrow brought his claim under § 1962(c), which we have distilled to mean that "a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering." *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993) (per curiam).[2] To succeed on his claim, Zastrow must provide evidence of the existence of "1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Id.* (internal quotation marks omitted).

---

[2] Section 1962(c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

No. 14-20359

"Racketeering activity" means any of the predicate acts specified in § 1961(1). Zastrow alleges that defendants obstructed justice in violation of 18 U.S.C. § 1503 by attempting to intimidate him to prevent him from giving deposition testimony and testifying at the arbitration hearing.[3]  As relevant here, that statute makes it a criminal offense to "corruptly or by threats or force, or by any threatening letter or communication . . . . endeavor[] to influence, obstruct, or impede, the due administration of justice."  18 U.S.C. § 1503(a).[4]  In support of his claim, Zastrow identifies three purported criminal actions by defendants: (1) the January 7 phone call from Mercedes Greenway warning him not to testify; (2) the January 9 phone call from Mercedes Greenway informing Zastrow that it would no longer sell him auto parts; and (3) the January 14 letter from Kurisky officially ending Mercedes Greenway's business relationship with Zastrow because of his deposition testimony.

## A.

Zastrow's claim fails initially because he cannot show the "pattern of racketeering activity" required to prosecute a civil RICO claim.  A pattern of racketeering activity "consists of two or more predicate criminal acts that are

---

[3] To the extent that Zastrow also purports to raise an independent claim under 18 U.S.C. § 1503 itself, this claim fails because "§ 1503 is a criminal statute that does not provide for a private cause of action." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc); *accord Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960).

[4] The government must establish three elements to prove an obstruction of justice violation under § 1503: "(1) there must be a pending judicial proceeding; (2) the defendant must have knowledge or notice of the pending proceeding; and (3) the defendant must have acted corruptly with the specific intent to obstruct or impede the proceeding in its due administration of justice." *United States v. Williams*, 874 F.2d 968, 977 (5th Cir. 1989).  An "arbitration is not a judicial proceeding," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222 (1985), and thus there is some question as to whether an arbitration compelled by a district court satisfies the first element of § 1503.  Because Zastrow's RICO claim fails on other grounds and defendants did not raise this objection, we assume without deciding that the arbitration at issue qualifies as a judicial proceeding under § 1503.

(1) related and (2) amount to or pose a threat of continued criminal activity." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (internal quotation marks omitted).

First, Zastrow has, at best, identified only a single predicate act under § 1503: the January 7 phone call. Although he attempts to squeeze all three of defendants' actions under § 1503, an obstruction of justice statute, it is clear that the phone call and letter terminating Mercedes Greenway's business relationship with Zastrow were not attempts "to obstruct or impede the proceeding," *United States v. Williams*, 874 F.2d 968, 977 (5th Cir. 1989), but, as Zastrow claims in his briefing, "*retaliatory* in nature." (emphasis added). That is, Mercedes Greenway's termination of dealings with Zastrow cannot be construed as threats to prevent his live testimony in the arbitration hearing because there was no threat of further penalty—the dealership unequivocally terminated its business with Zastrow because of his deposition testimony, it did not make future dealings contingent on his absence at the hearing (or indicate in any way that it would reconsider its decision if Zastrow did not testify).

Witness retaliation is a separate crime covered by 18 U.S.C. § 1513, the violation of which also qualifies as a predicate act under RICO. 18 U.S.C. § 1961(1). Defendants' purported misconduct, however, clearly does not fall under this statute (and Zastrow does not argue that it does). *See* 18 U.S.C. § 1513(a)–(b) (prohibiting killing, causing bodily injury, or damaging the tangible property of another person, or threatening to do so, with the intent to retaliate against a witness); *id.* § 1513(e) (prohibiting the "interference with the lawful employment or livelihood of any person[] for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense"). Thus, even assuming the validity

6

of Zastrow's theory that threatening to sever a voluntary business relationship constitutes obstruction of justice under § 1503,[5] only Mercedes Greenway's initial phone call warning Zastrow not to testify would qualify as a predicate act under RICO.

Moreover, even assuming that the two phone calls and the letter constitute three predicate acts under § 1503, Zastrow would still fail to satisfy the continuity requirement. "To establish continuity, plaintiffs must prove 'continuity of racketeering activity, or its threat.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). "This may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241). Continuity over a closed period requires proof of "a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ." *Id.* Continuity over an open period requires "a threat of continued racketeering activity." *Id.* This may be established where the predicate acts "themselves involve a distinct threat of long-term racketeering activity" or "are part of an ongoing entity's regular way of doing business." *Id.* at 242–43.

---

[5] Although Zastrow did not allege a violation under 18 U.S.C. § 1512, that statute specifically covers intimidation of a witness. In 1982, Congress concurrently enacted § 1512 and deleted all references to witnesses in § 1503. We have held that in doing so, Congress did not intend that threats against witnesses would fall exclusively under § 1512. *See United States v. Branch*, 850 F.2d 1080, 1082 (5th Cir. 1988); *United States v. Wesley*, 748 F.2d 962, 964 (5th Cir. 1984). Again, because Zastrow's RICO claim fails even assuming that Mercedes Greenway's "threat" would be indictable under § 1503, we need not determine whether the alleged offending phone call would rise to the level of obstruction of justice.

The alleged witness intimidation and retaliation were committed within one week and were directed towards, at most, two discrete events: Zastrow's deposition and his possible testimony at the arbitration hearing. "[W]here alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith*, 90 F.3d at 123. We have held that, where all of the alleged predicate acts took place in the context of defending a lawsuit, the unlawful conduct "did not constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 742–43 (dismissing civil RICO claims because multiple acts of alleged mail and wire fraud were committed in an "otherwise lawful" defense of a lawsuit that was "now over"). As in *Burzynski*, the alleged predicate acts here were committed in the context of Mercedes Greenway's defense of a lawsuit. Zastrow cannot credibly argue that obstructing justice is part of defendants' regular way of doing business or that their purported attempts to intimidate him create a threat of long-term racketeering activity. The entirety of Zastrow's claim is that Mercedes Greenway refused to sell him parts after he served as an expert witness against the dealership in an arbitration. Any argument that Mercedes Greenway's business decision threatens long-term criminal activity is frivolous. Thus, Zastrow has not shown that defendants' alleged predicate acts amount to or constitute a threat of continuing racketeering activity.

B.

Finally, even if Zastrow had produced evidence of a pattern of racketeering activity, he has not demonstrated the existence of an enterprise.

Zastrow argues that he has properly pled an "association-in-fact" enterprise[6] between Mercedes Greenway, Kurisky, and his law firm,[7] and points to the allegation in his complaint that "[defendants] in combination agreed to engage in unlawful acts of obstructing, impeding or influencing the due administration of justice by communicating by telephone and later threatening letter to a witness in an arbitration hearing in violation of 18 U.S.C. § 1503." "An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). An association-in-fact enterprise "must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission of the predicate acts." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987). Construed generously, Zastrow's complaint alleges an enterprise created by the alleged racketeering activity itself. This is obviously not

---

[6] The RICO statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

[7] Zastrow also summarily states that "[Mercedes] Greenway fits the definition of an enterprise on its own." However, § 1962(c) "requires that the RICO person be distinct from the RICO enterprise," *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 445 (5th Cir. 2000), and thus Zastrow could not proceed against the dealership if it alone is the enterprise. To the extent that Zastrow would be content to continue on against Kurisky and his law firm, he would be unable to do so because—in addition to the litany of other reasons described above—they did not "participate in the operation or management of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[W]e hold that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself."); *see RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 n.7 (D.C. Cir. 2012) (stating that "[t]he circuit courts of appeals have declined to extend RICO liability under § 1962(c) to an attorney's provision of routine legal services" and listing cases).

sufficient to plead the existence of an enterprise "separate and apart from the pattern of racketeering activity in which it engages." *Whelan*, 319 F.3d at 229.

The district court properly granted summary judgment on Zastrow's breach of contract claim dressed in civil RICO garb.

## IV.

Zastrow also appeals the district court's grant of summary judgment to defendants on his claims under §§ 1981 and 1982.[8]  Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.  Section 1981 also prohibits retaliation against an individual who "has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008).  Section 1982 offers the same protection for "rights related to the ownership of property," *id.* at 446, and is not relevant here.

Zastrow argues that his testimony regarding the condition of the CLK was necessary to prove the Howards' claims that Mercedes Greenway sold them a defective vehicle because of their race and in retaliation for complaining about discriminatory treatment, and thus that he was helping the Howards secure their § 1981 rights.[9]  The district court held that Zastrow's testimony

---

[8] The district court also granted summary judgment on Zastrow's Title VII retaliation claim.  Because he has not briefed the issue, it is waived. *Atwood v. Union Carbide Corp.*, 847 F.2d 278, 280–81 (5th Cir. 1988) (per curiam).  In any case, it should be obvious that Zastrow has no Title VII claim because neither he nor the plaintiffs in the underlying arbitration were employees of Mercedes Greenway and there were no Title VII proceedings.

[9] At oral argument, defendants argued that § 1981 prohibits retaliation only against an individual who attempts to vindicate the rights of someone suffering *discrimination*, not one who has suffered *retaliation* because of a previous complaint of discrimination. Defendants further argued that the Howards' complaint against Mercedes Greenway alleged only a retaliation claim under § 1981, and thus that Zastrow's testimony, even if it supported

was not protected by § 1981 because "he only provided technical, expert testimony about the [v]ehicle" and he "had no knowledge of any specific instances of racial discrimination against the Howards by Mercedes Greenway." This was error.

Section 1981 prohibits retaliation against an individual who has attempted to vindicate another's § 1981 rights; statutory protection is not limited only to those who have personally witnessed the alleged discriminatory conduct. Likewise, it is immaterial that Zastrow did not speculate that Mercedes Greenway discriminated against the Howards. The Howards could not prove that the dealership sold them a defective car because of their race without Zastrow's testimony that the vehicle was, in fact, defective.[10] Because Zastrow's testimony supported the Howards' § 1981 claim, it is protected under the statute. *See Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1032 (8th Cir. 2013) (holding that an employee who provided an interview in the course of an internal investigation into alleged discriminatory conduct by a supervisor was protected from retaliation under § 1981 because "someone who has

---

that claim, was one step removed from the scope of the statute's protection. Protection for an individual who attempts to vindicate another's contract-related right does not hinge on whether the victim of discrimination precisely affixes a § 1981 label to the deprivation of his civil rights. Further, because we find that the Howards' *pro se* complaint, liberally construed, alleges that Mercedes Greenway sold them a defective vehicle because of their race, we need not address the scope of *Humphries*.

[10] When asked in his deposition whether he testified in support of the Howards' racial discrimination claims, Zastrow responded that he did not. Defendants argue that this "admission" defeats Zastrow's claim this his testimony in the Howards' lawsuit was protected under § 1981. Construed in the light most favorable to Zastrow, however, his statement indicates only that he did not testify directly as to whether Mercedes Greenway discriminated against the Howards, not that he was unaware of the Howards' claims of racial discrimination.

substantiated a complaint of a civil rights violation has . . . acted to vindicate the rights of minorities").[11]

Defendants also argued in the district court that Texas public policy favors freedom of contract and a company's termination of a business relationship with an expert witness who testified against it is not actionable retaliation. This is true, so long as the refusal to contract with the witness is not based on his race, or because he has attempted to vindicate another's § 1981 rights. *See Humphries*, 553 U.S. at 452–53 (holding that § 1981's protection extends to an individual who attempts to secure another's rights under the statute); *Patterson v. McLean Credit Union*, 491 U.S. 164, 176–77 (1989) (explaining that § 1981 "prohibits, when based on race, the refusal to enter into a contract with someone"), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, *as recognized in Humphries*, 553 U.S. at 450. Because Zastrow has alleged that Mercedes Greenway refused to sell him parts after he testified in support of the Howards' discrimination claims, he has stated a claim for retaliation under § 1981.

We are skeptical, however, that Zastrow can prove that defendants violated Zastrow's § 1981 rights. Perhaps because non-employment retaliation claims under § 1981 are exceedingly rare, none of the parties has articulated

---

[11] The Eighth Circuit also suggested in *Sayger* that testimony in a civil racial discrimination suit is protected activity under § 1981. In *Gacek v. Owens & Minor Distribution, Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012), the Eighth Circuit left that question open. One year later in *Sayger*, the court explained that a subsequent circuit decision had held that protected activity under Title VII is also protected activity under § 1981, and Title VII makes it illegal to retaliate against an employee who has testified or participated in any manner in a proceeding under that statute. 735 F.3d at 1031. The import of this holding is that any testimony in a racial discrimination case is protected by § 1981. Because the Howards' complaint listed a myriad of non-discrimination claims, this automatic protection does not apply here. As explained above, though, participation in a case containing both discrimination and non-discrimination claims is protected if it supports any of the racial discrimination claims.

the legal framework to apply to Zastrow's claim. Section 1981 retaliation claims are evaluated under the familiar three-part test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Willis v. Cleo Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). First, to establish a prima facie case of non-employment retaliation under § 1981, a plaintiff must show that: (1) he engaged in activity protected by § 1981; (2) he was subjected to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *See id.* at 317; *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001) (adapting prima facie elements for a non-employment retaliation claim under § 1981 from the elements of a retaliation claim under Title VII).[12] If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse action. *See Willis*, 749 F.3d at 317–18. And if the defendant provides such an explanation, the burden returns to the plaintiff to show that the proffered reason was pretext for retaliation. *See id.* at 318.

Defendants have challenged only the first two prongs of the prima facie case, arguing (incorrectly) that Zastrow's testimony was not protected by § 1981 and that refusal to contract is not an adverse action. They have not challenged Zastrow's ability to demonstrate pretext. As discussed above, however, a company's refusal to contract with someone who has criticized its business and impugned its reputation is not illegal retaliation—so long as that refusal is not a reprisal for a complaint of racial discrimination or an attempt to support the complaint of another. Zastrow's testimony about the condition

---

[12] While our circuit has provided a modified prima facie test for non-employment discrimination claims under § 1981, *see e.g., Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288–89 (5th Cir. 2004), it does not appear that we have explicitly done so for retaliation claims.

of the CLK was necessary to establish almost all of the Howards' claims, including those for fraud, negligence, breach of contract, and breach of warranty. If Mercedes Greenway contended that it severed its business relationship with Zastrow simply because he disparaged the dealership's products or quality of service, Zastrow would have to show that it actually did so because his testimony supported the Howards' § 1981 claims. In other words, he would have to show that, but for his testimony's relevance to the Howards' discrimination claims—his attempt to secure their § 1981 rights—the dealership would not have stopped selling him parts. *See, e.g.*, *Willis*, 749 F.3d at 317–18 (applying "but for" standard of causation to third-step pretext inquiry for § 1981 employment retaliation claim); *see also Roberts v. Lubrizol Corp.*, 582 F. App'x 455, 460–61 & n.4 (5th Cir. 2014) (per curiam) (same).

It appears to us that, in light of the general nature of his testimony and the plethora of claims in the Howards' case, it will be difficult for Zastrow to create a genuine issue of fact as to pretext. But defendants have not made any arguments related to steps two or three of the burden-shifting analysis and thus we do not decide the issue.[13] *See Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (explaining that we may affirm a judgment on a ground not addressed by the district court only if the argument was raised below). Accordingly, we VACATE the district court's grant of summary judgment on

---

[13] Defendants stated in their district court brief that they "have not found any authority supporting the [p]laintiffs' allegations that a company deciding to sever a business relationship with someone who testified as a paid expert witness against them is actionable as retaliation." This statement does not constitute the proffer of a non-retaliatory reason for refusing to contract with Zastrow; it is simply a recitation of the undisputed facts that Zastrow was an expert witness and that Mercedes Greenway terminated its dealings with him after he testified—it does not explain *why* Mercedes Greenway did so. As discussed above, if the dealership refused to sell Zastrow parts because his expert testimony supported the Howards' racial discrimination claims, its refusal to contract was illegal retaliation under § 1981; if not, it wasn't.

No. 14-20359

Zastrow's § 1981 claim and REMAND the case to the district court.  That court may choose to allow additional summary judgment briefing and perform the *McDonnell Douglas* analysis in the first instance.

V.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on Zastrow's civil RICO claim and his § 1982 claim, but VACATE its judgment on Zastrow's § 1981 claim and REMAND the case for further proceedings consistent with this opinion.