# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-1980

———————

Tsegaye Takele,                                    *
                                                   *
            Appellant,                             *
                                                   *   Appeal from the United States
     v.                                            *   District Court for the
                                                   *   District of Minnesota.
The Mayo Clinic,                                   *
                                                   *
            Appellee.                              *

———————

Submitted: May 13, 2009
            Filed: August 17, 2009 (corrected August 24, 2009)

———————

Before LOKEN, Chief Judge, BYE, Circuit Judge, and MILLER, District Judge.[1]

———————

MILLER, District Judge.

Tsegaye Takele, a black male and citizen of Ethiopia, sued his employer, the Mayo Clinic ("Mayo"), for discrimination on the basis of race and national origin in violation of Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, retaliation, and defamation. The district court[2] granted summary judgment in favor of Mayo on all

———————

[1]The Honorable Brian Stacy Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

claims. Takele appeals the court's grant of summary judgment on the discrimination and retaliation claims. We affirm.

I.

In November 2002, Takele, who has his Ph.D. in physics, applied for admission to the Medical Physics Residency Program ("Residency Program") at Mayo. The application identified him as a black male and citizen of Ethiopia. After his interview, Edwin McCollough, Ph.D., Michael Herman, Ph.D., Robert Kline, Ph.D., and Jon Kruse, Ph.D., decided to admit Takele into the Residency Program. The admission letter, dated April 16, 2002, stated, "Continuation and completion of the program are dependent upon satisfactory progress in education, performance of all duties, and compliance with Mayo Graduate School of Medicine policies." Mayo policy stated that "[a] grade of 'C' or lower results in immediate evaluation of a resident's progress," and "[c]ontinued unsatisfactory performance will likely result in probation and/or termination."

On July 2, 2003, Takele began his first rotation in Dosimetric Systems, one of eight separate major rotations to be completed in the course of the two-year Residency Program. The meeting minutes of the Medical Physics Executive Committee (the "Executive Committee") and rotation reviews from September and October 2003 demonstrate that Takele had difficulty understanding basic concepts. Indeed, he earned a "C" in the first quarter of his residency, which was reported on December 9, 2003. On January 20, 2004, Takele earned a "B" for the second quarter, as he had "demonstrated real improvement in effort and understanding." The Executive Committee minutes of February 18, 2004, as well as the evaluations performed by various dosimetrists throughout March 2004, show that Takele was having comprehension problems.

Takele was placed on probation by Drs. Herman, Kline, Kruse, and Brinkmann on May 3, 2004, after earning his second "C." The probation letter states that nine months into the two-year Residency Program, Takele's "first rotation is not fully signed off." Takele, however, disputes this statement. Although Takele received some favorable performance evaluations from May through July 2004, serious performance deficiencies are documented.

In June 2004, Takele requested a meeting with an ombudsperson. The ombudsperson's notes, dated June 18, 2004, state that Takele felt he was treated "differently." The notes also document that Takele was concerned that "another guy left the program that was international." It is also noted, however, that Takele was not sure why the individual left the program. The notes further indicate that although Takele did not state that "he felt discriminated against in any specific way," he did state that he felt "personally discriminated against." Another set of notes, dated August 3, 2004, labeled "PM Call," provide that Takele stated, "I don't know if it's racial or what."

On August 3, 2004, Drs. Herman, Kline, Kruse, and Brinkmann unanimously recommended that Takele be terminated or given the option to resign from the Residency Program. In support of this recommendation, they stated that Takele was unable to work independently and would "be a hazard to human life if he stay[ed] in this field." Takele appealed to the Dean, Roger L. Nelson, who appointed an appeal review committee. Takele testified before the review committee that the true reasons for expulsion were his superior physics and mathematics background and the faculty's embarrassment at being unable to answer his questions. The appeal review committee unanimously voted to deny the appeal.

Takele filed his original complaint on April 21, 2006, an amended complaint on May 22, 2006, and a second amended complaint on November 13, 2006, alleging discrimination on the basis of race and national origin in violation of Title VII and 42

U.S.C. § 1981, retaliation, and defamation. Mayo moved for summary judgment, and the district court granted the motion. The court found that Takele presented no direct evidence of discrimination and failed to establish his prima facie case of discrimination because he did not establish that he was qualified to continue in Mayo's Residency Program, and he failed to demonstrate that Christopher Hagness, a white male in the Residency Program, was similarly situated. The district court also found that Mayo offered a legitimate, non-discriminatory reason, specifically Takele's performance deficiencies and the faculty's concerns for patient safety, for its actions, and Takele failed to show pretext. As to Takele's retaliation claim, the district court found that Takele failed to establish a prima facie case because there was no evidence that his dismissal was connected to his complaint to the ombudsperson, and even if he had established a prima facie case, he provided no evidence that Mayo's reasons for dismissing him were pretext for retaliation. Finally, the district court dismissed Takele's defamation claim because he could not demonstrate that the allegedly defamatory statements were objectively false statements of fact. Takele appeals the district court's grant of summary judgment on his discrimination and retaliation claims.

II.

"Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." Bearden v. Int'l Paper Co., 529 F.3d 828, 831 (8th Cir. 2008). "We review the district court's grant of summary judgment de novo and view the evidence in the light most favorable to the nonmoving party." Id. We apply the same analysis to claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981. Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 864 n.3 (8th Cir. 2008); Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997).

III.

The district court's order granting summary judgment as to Takele's discrimination claims, based on race and national origin, is affirmed. The district court was correct in determining that Takele failed to show direct evidence of discrimination. "An employee may establish unlawful employment discrimination through direct or indirect evidence." Bearden v. Int'l Paper Co., 529 F.3d at 831. Takele argues that an e-mail dated August 11, 2004, sent by a Mayo staff member to members of the faculty is direct evidence of discrimination. The e-mail set forth the status of Takele's visa in relation to the appeal process, as well as the possibility that Takele would raise the issue of discrimination. The court agrees with the district court's assessment that the e-mail does not constitute direct evidence of discrimination. As noted by the district court, although the e-mail mentions Takele's immigration status, it does not reflect a discriminatory attitude, was not sent by a decision-maker, and was sent after the initial decision to dismiss Takele.

Because there is no direct evidence of discrimination, we apply the framework provided by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To make a prima facie Title VII discrimination case, Takele must show that he (1) is within the protected class, (2) was qualified to perform the job, (3) suffered an adverse employment action, and (4) has facts that give rise to an inference of discrimination. McGinnis v. Union Pac. R.R., 496 F.3d 868, 874 (8th Cir. 2007). If Takele can establish a prima facie case, the burden of production shifts to Mayo to articulate a legitimate, non-discriminatory reason for its action. Qamhiyah v. Iowa State Univ. of Sci. and Tech., 566 F.3d 733, 745 (8th Cir. 2009). If Mayo makes such a showing, Takele must then demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination. Id.

We agree with the district court's conclusion that Takele failed to establish the fourth prong of the prima facie case. A plaintiff may establish the fourth prong by producing facts that similarly situated employees, not in the protected class, were treated differently. Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir. 2004). Takele argues that he was similarly situated to Dr. Christopher Hagness, a white male in the Residency Program, but was treated less favorably. The grade reports of Dr. Hagness, however, demonstrate that he was successfully progressing through the program; that he never received below a "B"; and that any faculty concerns were not related to basic fundamentals, were far less severe than the concerns with Takele, and were resolved over time. Additionally, Takele admits that he had no knowledge about the schedule, faculty interaction, or training of Dr. Hagness. The court agrees with the district court's finding that Takele failed to establish that Dr. Hagness was similarly situated. No reasonable jury could find that the two men were similarly situated in all relevant respects. Jones v. Frank, 973 F.2d 673, 677 (8th Cir. 1992).

Moreover, the district court would be affirmed even if Takele could establish his prima facie case, because Mayo has articulated a legitimate, non-discriminatory reason for terminating Takele from the Residency Program, and Takele failed to point to any evidence supporting a finding of pretext. As noted by the district court, three of the four people who made the decision to admit Takele into the Residency Program made the decision to terminate him. See Calvin v. Yellow Freight Sys., Inc., 218 F.3d 904, 906-07 (8th Cir. 2000) ("The courts have held that it is unlikely that a person would hire a minority and then . . . decide to fire that same person based on [] the minority status.").

Takele argues that there were discriminatory attitudes toward him and, as proof, points to Drs. Herman and Kline comparing his successful completion of a treatment plan to a thousand monkeys getting together to write the Bible. He also states that on a number of occasions, laughing and joking between Drs. Herman, Kruse, and Hagness would abruptly stop when he approached. He further states that, on one

occasion, he heard reference being made to foreigners and someone Ethiopian. These statements, however, do not demonstrate pretext or create a reasonable inference of discrimination, as the comments do not suggest discriminatory animus without resorting to speculation.

Further, during the appeals process, Takele never asserted that Mayo discriminated against him on the basis of race or national origin. Rather, he stated that "[t]he true reason they want to expel me from the program is because I am well prepared to the field, ambitious, hard working (on the average 12 to 16 hours a day), equipped with superior physics and mathematics back ground (much better than any one of them), and unable to properly answer some of my questions (which they perceived as an embarrassment and a challenge) – I strongly believe this is the ulterior motive behind all this circus." Takele's Equal Employment Opportunity Commission submission echoes this sentiment.

## IV.

The district court's order granting summary judgment as to Takele's retaliation claim is affirmed. To make out a prima facie retaliation case, Takele must show that he: (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006). If Mayo articulates a legitimate, non-retaliatory reason for the termination, Takele must show pretext. Macias Soto v. Core-Mark Int'l, Inc., 521 F.3d 837, 841 (8th Cir. 2008).

Takele argues that he was terminated because he complained of discrimination to the ombudsperson. Even if Takele complained of discrimination to the ombudsperson prior to his termination, which has not been shown, Takele failed to establish a causal connection between his complaint and his termination. The record demonstrates that Mayo's concerns with Takele's performance began long before

Takele met with the ombudsperson, and that he had been on probation for approximately one month before the meeting. The record also demonstrates that only Dr. Herman was aware that Takele was meeting with the ombudsperson, but that he had no reason to suspect that Takele had complained of discrimination. Furthermore, as discussed above, Mayo articulated a legitimate, non-retaliatory reason for the termination, and Takele failed to establish pretext.

The judgment of the district court is affirmed.

_____