# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3301

_____

Tony Sayger

*Plaintiff - Appellant*

v.

Riceland Foods, Inc.

*Defendant - Appellee*

_____

No. 12-3395

_____

Tony Sayger

*Plaintiff - Appellee*

v.

Riceland Foods, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 25, 2013
Filed: November 18, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Tony Sayger brought this action against Riceland Foods under 42 U.S.C. § 1981, Title VII, the Arkansas Civil Rights Act, and other statutes, alleging retaliatory discharge after being a witness in an internal investigation into a complaint about a manager. After the district court[1] granted summary judgment to Riceland on Sayger's Title VII and ACRA claims, his § 1981 claim proceeded to trial. The jury awarded Sayger approximately $60,000 in compensatory damages and back pay. The district court denied both Riceland's motion for judgment as a matter of law and Sayger's motion for a new trial on punitive damages, but it granted in part Sayger's motion to amend the judgment to include equitable relief. Both parties appeal.

I.

Tony Sayger is a Caucasian hired in 1999 as a maintenance worker in the Riceland Foods rice division warehouse in Stuttgart, Arkansas. In 2009 Sayger was working in the Warehousing, Packaging, and Shipping (WPS) department. He later testified that he heard supervisor Ralph Crane frequently use offensive language about black employees. This included "calling them 'niggers,' degrading their work, [and] saying they stunk." When Sayger asked him to stop, Crane just said "he would treat the niggers for what they were." According to Sayger, black employees were

_____

[1]The Honorable Brian S. Miller, now Chief Judge, United States District Court for the Eastern District of Arkansas.

offended by Crane's remarks. There was also trial testimony from others about Crane's use of racist language, including from warehouse superintendent Rick Chance and several former Riceland employees.

In spring 2009 two of Sayger's white coworkers, Rick Turney and Randy Bennett, spoke to the division human resources manager, David Hoover, about filing a grievance for an incident in which Crane made offensive remarks. Hoover testified that he also checked with several other employees about the incident. Although one of them told Hoover that he had heard Crane use racist language, Crane said he did not remember when Hoover asked about it. Hoover did no further investigation after that point. Turney filed a grievance in April 2009, alleging that Crane had said that a black Riceland employee "smelled like a nigger." As Turney's supervisor, Crane was required to answer and sign the statement. Crane responded that he had "no recollection of having made those statements." Turney took the next step provided by the company grievance policy and submitted his grievance to the WPS manager, Martin Jones.

Jones then took statements from Randy Bennett and another Riceland employee who had been listed as a witness. Bennett confirmed Turney's allegation about Crane, but the other employee answered that he did not remember what had occurred. Bennett later testified that Jones had responded to his statement by asking, "Are you just trying to ruin [Crane's] career?" Jones concluded that "[i]nconsistent statements given by each witness do not support the alleged grievance." Therefore, "a[n] offense ha[d] not been committed." The rice division manager at Stuttgart, Scott Lindsey, upheld Jones' decision on review.

A second grievance was later filed by Turney based on additional racist remarks by Crane. When the company failed to respond to the second grievance, Turney filed a third. Turney and Bennett then both wrote letters to human resources director Linda Dobrovich. Bennett's letter listed dates, descriptions, and witnesses

for six separate incidents when Crane made offensive statements. Sayger was one of the listed witnesses. Dobrovich interviewed seven employees in May, including Turney, Bennett, and Sayger. Sayger stated that he spoke with Dobrovich for 20 to 30 minutes while she took "about two pages" of notes, and he told her about Crane's derogatory comments to black employees. Dobrovich summarized her findings in a report to Jones and Lindsey, stating that "there seem[ed] to be a pattern of inappropriate language and use of derogatory racial comments" by Crane. She recommended that Crane attend diversity training if he continued in his managerial role. Although she had "concerns" about him as a manager, she would "trust your judgment on the proper action to be taken." Crane attended diversity training in July 2009, but no other discipline was ever recorded in his employee file.

Both Bennett and Turney received notice on June 30, 2009 that they would be terminated on July 30. Subsequently, Sayger received a "Layoff Notice" from Riceland on October 30, 2009, indicating that he would be laid off on November 12 and terminated if not recalled within nine months. Sayger later testified in a jury trial brought against Riceland by Bennett and Turney in April 2011; a verdict in favor of the plaintiffs resulted. Bennett v. Riceland Foods, No. 5:11CV00104-JMM. Sayger filed a charge of discrimination with the EEOC against Riceland on May 5, 2010 and he brought this action in federal court in April 2011.

In this case Sayger raised both federal and state claims including claims under 42 U.S.C. § 1981, Title VII, the Family and Medical Leave Act, the Arkansas Civil Rights Act of 1993 (ACRA), and a state law negative reference claim. The district court granted summary judgment in favor of Riceland on the Title VII and ACRA claims, Sayger's Family and Medical Leave Act claim, and his state law negative reference claim. Sayger's § 1981 claim then proceeded to trial. The court granted Riceland's motion in limine prior to trial, excluding evidence of the outcome in the separate case brought by Bennett and Turney.

-4-

At trial Sayger testified that Turney had asked him to be a witness on his grievance and that Crane started to treat him "worse" after he participated in the human resources investigation. Sayger also reported that he heard Crane say that "two troublemakers are fixing to leave here" a few weeks prior to the termination of Bennett and Turney. Just three to four weeks before Sayger was fired, Crane told Sayger "[t]here is fixing to be some more troublemakers leaving here." Riceland argued at trial that it laid off Sayger, Bennett, and Turney as part of "cost reduction" involving over 40 positions, but Sayger presented evidence questioning the cost effectiveness of firing maintenance workers. Warehouse superintendent Rick Chance testified that he had never before seen maintenance workers laid off because they are "considered essential to the production." Superintendent Chance also stated that after his prior testimony about the three layoffs, Lindsey disciplined him for "poor job performance" despite his having worked at Riceland for 12 years and "never [having] had one thing less than superior." There was also evidence that Hoover, Jones, and Crane all were involved in the decisions to terminate Bennett, Turney, and Sayger.

The jury returned a verdict for Sayger on his § 1981 claim, awarding him $30,000 in compensatory damages and $30,608 in back pay. The district court denied both Riceland's motion for judgment as a matter of law and Sayger's motion for a new trial on punitive damages. Sayger also moved to amend the judgment. The district court granted him prejudgment interest as to back pay, but denied front pay, reinstatement, and prejudgment interest on his compensatory damages. Sayger appeals from the summary judgment on his ACRA claim, the denial of his motion for a new trial on punitive damages, the partial denial of equitable relief, and the grant of Riceland's motion in limine to exclude evidence of the verdict in the action brought by Bennett and Turney. Riceland cross appeals the denial of its motion for judgment as a matter of law.

## II.

Riceland cross appeals the denial of its motion for judgment as a matter of law on Sayger's § 1981 claim. Fed. R. Civ. P. 50. Our review is de novo, but the evidence is viewed "in the light most favorable to the jury verdict, giving the verdict the benefit of all reasonable inferences." Jones v. Nat'l Am. Univ., 608 F.3d 1039, 1046 (8th Cir. 2010). Judgment as a matter of law "is appropriate only when all the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995) (internal quotation marks omitted). Riceland argues that the district court erred in denying its motion because Sayger was not seeking to vindicate the rights of minorities and failed to present evidence of causality or pretext.

Section 1981 guarantees to all persons the same right to contract "as is enjoyed by white citizens," 42 U.S.C. § 1981(a), and encompasses claims of retaliation. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 457 (2008). We "apply the same analysis" to § 1981 retaliation claims and to retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Takele v. Mayo Clinic, 576 F.3d 834, 838 (8th Cir. 2009). Although the wording of § 1981 differs from that of Title VII, the underlying retaliation analysis is the same and we may look to Title VII precedent to inform our analysis of the elements under § 1981. See Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997).

To succeed on his § 1981 claim, Sayger first must establish a prima facie case of retaliation by demonstrating: "(1) that he[] engaged in statutorily protected activity; (2) an adverse employment action was taken against him[]; and (3) a causal connection exists between the two events." Gilooly v. Mo. Dep't of Health and Senior Servs., 421 F.3d 734, 739 (8th Cir. 2005). Riceland would then have to show a "legitimate, non-retaliatory reason" for the adverse action. Takele, 576 F.3d at 839.

Sayger then had to show by a preponderance of the evidence that Riceland's proffered reason was pretextual. Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011). Riceland argues that Sayger did not satisfy either the first or third requirements and failed to show pretext.

An individual who is not a minority may bring a § 1981 claim if he or she has been "discriminated or retaliated against for attempting to 'vindicate the rights of minorities protected by' § 1981, because allowing such discrimination or retaliation to stand unchallenged 'would give impetus to the perpetuation of racial restrictions.'" Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1146 (8th Cir. 2012) (citing Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237 (1969)). Title VII's antiretaliation provision protects employees who "opposed any practice made an unlawful employment practice by this subchapter" and employees who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.

As Riceland points out, in Gacek the plaintiff failed to show pretext; we thus declined to discuss whether or not deposition testimony for a coworker's racial discrimination suit was protected under § 1981. Gacek, 666 F.3d at 1146. We observed there that while such testimony was "likely" protected under Title VII, that did not mean that it necessarily was under § 1981. Id. We have concluded since then, however, that "statutorily protected activity" for a retaliation claim under § 1981 is conduct covered by Title VII. Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 684 (8th Cir. 2012). In Davis, we explained that Title VII prohibits discrimination "against an employee who has opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the statute." Id. (internal quotation marks omitted). The question here is whether Sayger's serving as a witness in the internal investigation was conduct vindicating the rights of minorities, a question we have not yet decided.

Even though the language of § 1981 and Title VII differs, our precedent establishes that the analysis is the same for both. Takele, 576 F.3d at 838. Cases interpreting opposition under Title VII are thus instructive in determining whether conduct "vindicate[d] the rights of minorities" and is therefore protected under § 1981. The Supreme Court has explained that answering an employer's questions in an internal investigation can be opposition within the meaning of Title VII even if it does not qualify as participation in an "investigation, proceeding, or hearing." Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 276–80 (2009). As the Court stated in Crawford, there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion." Id. at 277. The Court explained that "nothing in [Title VII] requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." Id. at 277–78. Otherwise, "prudent employees would have a good reason to keep quiet about Title VII offenses against themselves or against others." Id. at 279.

The Court's analysis in Crawford is helpful in analyzing whether Sayger acted to vindicate the rights of minorities. We conclude that someone who has substantiated a complaint of a civil rights violation has demonstrated opposition to that violation and acted to vindicate the rights of minorities. Such an individual should therefore receive the same protection against retaliation as the person who filed the original complaint. If employees who give evidence or respond to questions during internal inquiries into alleged discrimination are not protected from retaliation, it would impede any internal efforts to address discrimination. When Sayger reported to Dobrovich that he had witnessed offensive conduct by Crane, he demonstrated his opposition to it and acted to vindicate the rights of the minority employees. Sayger later testified at trial that he was opposed to Crane's conduct and had previously asked

-8-

him to stop making offensive remarks. In reporting Crane's conduct to Dobrovich, Sayger was engaging in "statutorily protected activity" under § 1981.

Riceland argues that Sayger did not establish the necessary cause and effect between Sayger's statutorily protected activity and Riceland's adverse employment action. To show a causal connection, Sayger "must prove the desire to retaliate was the but for cause of [his] termination – that is, that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of [his employer]." Wright v. St. Vincent Health Sys., 730 F. 3d 732, 737 (8th Cir. 2013) (internal quotation marks omitted). We have previously concluded that "[t]he passage of time between events does not by itself foreclose a claim of retaliation," and cause may be shown even when there is a period of six months between the protected activity and an adverse employment action. Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir. 1997) (recognized as abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)).

We conclude that Sayger presented sufficient evidence of causation for a jury to find that he would not have been dismissed had he not served as a witness. Sayger had testified that prior to the terminations of Bennett and Turney and prior to Sayger's own dismissal, Crane made statements about "troublemakers" being gone from Riceland. There was evidence that the same managers who defended Crane or failed to investigate complaints were involved in the decisions to fire Bennett, Turney, and Sayger. Evidence also linked complaints and testimony by Bennett, Turney, and Chance to subsequent terminations or disciplines. Although there were five months between the interview with Dobrovich and Sayger's layoff, that did not eliminate the evidence of retaliation. See Smith, 109 F.3d at 1266.

When taken in the light most favorable to Sayger, the evidence shows that Riceland viewed the complaints about Crane as a greater problem than his own behavior. Sayger presented evidence that Riceland did not take the complaints about

Crane's conduct seriously despite its internal conclusion that the allegations were likely true and that it was "reasonable to question the truthfulness of [Crane's] denial." The managers involved were aware of the allegations and made almost no effort to investigate them. When presented at trial with evidence of Crane's conduct, division manager Lindsey answered that, "Crane does not participate or promote a hostile work environment in any way, according to Riceland." Crane received no discipline other than diversity training. He also obtained a rating of "Exceptional" for cooperativeness on his employee evaluation six months after Dobrovich reported the substantiated allegations against him. Riceland's failure to investigate complaints about Crane and its later failure to punish his conduct permitted an inference that the company simply viewed those who complained as "troublemakers."

Although Riceland provided a nondiscriminatory reason for Sayger's layoff, asserting at trial that it was part of a "cost reduction plan," we conclude that he presented sufficient evidence for the jury to find by a preponderance of the evidence that the proffered reason was pretextual. While Riceland stated that Sayger's layoff was economically motivated, both Sayger and Bennett testified that they spoke to managers about open positions at the company without any encouragement or success. Sayger also presented evidence casting doubt on the cost effectiveness of laying off three maintenance workers, including testimony that such workers were rarely laid off because they were considered "essential."

On appeal, Riceland argues that the district court erred in its causation instruction by using a "motivating factor" standard rather than a "determining factor" test. Riceland did not properly appeal the jury instructions, however, or move for a new trial based on them. Fed. R. App. P. 3(c)(1)(B). We therefore limit our review to the denial of its motion for judgment as a matter of law, a topic designated in the notice of cross appeal. Id.; see also United HealthCare Corp. v. Am. Trade Ins. Co., Ltd., 88 F.3d 563, 573 (8th Cir. 1996). Judgment as a matter of law would only be appropriate if all evidence pointed in Riceland's favor. See Commercial Prop. Invs.,

Inc., 61 F.3d at 644. We conclude that, taking all inferences in Sayger's favor, the evidence was sufficient for the jury to find retaliation. The district court therefore properly denied Riceland's motion for judgment.

Sayger asserts that the district court improperly granted summary judgment on his Title VII and ACRA claims. We first address the issue of whether Sayger's Title VII claim was properly preserved on appeal. A notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). We "construe notices of appeal liberally," but we "only have jurisdiction when the appellant's intent to challenge a particular order or judgment is apparent and the adverse party will suffer no prejudice if review is permitted." USCOC of Greater Mo. v. City of Ferguson, Mo., 583 F.3d 1035, 1040 (8th Cir. 2009). Although Sayger argues in his briefs that his Title VII claim was timely, he did not reference that claim either in his notice of appeal or amended notice of appeal. Sayger therefore failed to preserve his Title VII claim on appeal.

Even if Sayger had properly preserved his Title VII claim on appeal, summary judgment would have been in order because his claim was untimely. Our review is de novo. Argenyi v. Creighton Univ., 703 F.3d 441, 446 (8th Cir. 2013). Under Title VII a plaintiff must file an administrative charge with the EEOC within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The accrual date occurs "when the plaintiff receives notice of a termination decision." Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995). Sayger argues that his EEOC charge was timely filed on May 5, 2010 because his layoff occurred on November 12, 2009. The statute of limitations actually began to run when Sayger received the layoff notice on October 30, 2009. The district court thus correctly dismissed Sayger's Title VII claim as untimely. Moreover, even if Sayger's Title VII claim had been timely, he could have only recovered compensatory and punitive damages under it if he did not recover any under § 1981. 42 U.S.C. § 1981a(a)(1); see Kim, 123 F.3d at 1063.

It is not necessary to address the district court's grant of summary judgment on Sayger's state law claim under ACRA because that statute would not entitle Sayger to any additional relief beyond his § 1981 claim. Potential remedies under ACRA are injunctive relief, compensatory and punitive damages, and costs and attorney fees at the court's discretion. See Ark. Stat. Ann. §§ 16-123-107(b), -108. Under § 1981, Sayger is entitled to equitable and legal relief, including compensatory damages, punitive damages, and costs including attorney fees at the court's discretion. 42 U.S.C. § 1988(b); see Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 459–60 (1975). The standard for punitive damages is also identical under § 1981 and ACRA. Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 497 (8th Cir. 2002).

Sayger appeals the district court's grant of Riceland's motion to exclude evidence of the jury verdict in Bennett v. Riceland Foods, No. 5:11CV00104-JMM. We review a district court's ruling on a motion in limine for abuse of discretion. ACT, Inc. v. Sylvan Learning Sys., Inc., 296 F.3d 657, 669 (8th Cir. 2002). An employer's "past discriminatory policy and practice" may show that its proffered reasons for disparate treatment are pretextual and may thus be admissible. Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155–56 (8th Cir. 1990). On the other hand a jury verdict is not evidence, but merely "findings of fact, based on the evidence presented to it." Anderson v. Genuine Parts Co., Inc., 128 F.3d 1267, 1272 (8th Cir. 1997). In Anderson we concluded there was no reversible error in not admitting a verdict from a similar case involving the same employer; we noted that the district court had provided the plaintiff with "ample opportunities" to present the facts from the prior case. Id. Here, Sayger's retaliation claim arose from the same facts as those in the prior claims of Bennett and Turney. Bennett testified at Sayger's trial, and Turney's deposition testimony was also presented. Sayger thus had "ample opportunities" to introduce relevant facts from the prior case, and the jury verdict itself was not admissible evidence. Id.

Sayger appeals the district court's denial of his motion for a new trial on the issue of punitive damages. We review for abuse of discretion. Jones, 608 F.3d at 1047–48. An abuse of discretion occurs "if a relevant factor that should have been given significant weight is not considered, if an irrelevant or improper factor is considered and given significant weight, or if a court commits a clear error of judgment in the course of weighing proper factors." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004). The standard for punitive damages is the same under § 1981 and Title VII. Kim, 123 F.3d at 1063. A plaintiff must show "malice" or "reckless indifference," 42 U.S.C. § 1981a(b)(1), in respect to the employer's knowledge that it is "acting in violation of federal law." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999). Sayger did not show that Riceland's managers knew it would be a violation of federal law to retaliate against him for acting as a witness in its internal investigation. We conclude that the district court did not abuse its discretion by denying Sayger's motion for a new trial on punitive damages.

Sayger also appeals the partial denial of his motion to amend the judgment to include certain forms of equitable relief, focusing on the denial of his reinstatement. We review for abuse of discretion, Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998), and apply the same standard to a decision on whether to award equitable remedies, Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 321–22 (8th Cir. 1993). Sayger argues that the district court erred by denying him reinstatement, which would have served as a future deterrent to illegal action. Riceland responds that the court did not abuse its discretion by denying front pay or reinstatement because Sayger had not presented evidence of lost wages for 2011 or 2012 and had expressed concern about continued retaliation if he were reinstated. We see no abuse of discretion in denying him reinstatement.

III.

Accordingly, we affirm the judgment of the district court.

_____