NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3191
_____

LUZ PARADOA,

Appellant

v.

PHILADELPHIA HOUSING AUTHORITY


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 13-cv-06012)
District Judge:  Hon. Timothy J. Savage

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2015

Before:  CHAGARES, JORDAN, and BARRY, Circuit Judges.

(Filed: April 29, 2015)
_____

OPINION*
_____

CHAGARES, Circuit Judge.

        This is an employment discrimination action arising under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and under

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951, et seq.

Luz Paradoa appeals the District Court's order granting appellee Philadelphia Housing Authority's ("PHA's") motion for summary judgment on all claims. For the following reasons, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the facts relevant to our decision. Paradoa joined PHA in 2000 as a property manager. Appendix ("App.") 104a. In 2008, PHA promoted her to "Manager of the Community Partners Program," which required her to oversee staff, manage budgets, and supervise contractors. App. 105a-106a. Six or seven staff members reported to Paradoa. App. 106a.

In 2010, Paradoa's first cousin Angelique Martez joined PHA as a family self-sufficiency counselor. App. 183a-184a. Martez noted on her application that she knew someone who worked at PHA, but she did not specifically disclose her relationship to Paradoa. App. 185. Paradoa was Martez's supervisor until 2012. App. 190a.

In 2012, three of Paradoa's staff members filed Human Resources complaints accusing Paradoa of bullying them and showing favoritism toward Martez. App. 529a-530a. Joanne Strauss, PHA's director of Human Resources, reported that between seven and nine staff members complained to her about Paradoa, and at least four of them specifically complainted that Paradoa and Martez would speak together in Spanish and

2

laugh and point in ways that suggested they were making fun of other employees. App. 139a-140a.

PHA employment administrator Cheryl DeVose interviewed Paradoa regarding the complaints. App. 149a. Paradoa claims that DeVose asked her if she was Hispanic, if she spoke Spanish, and if she spoke Spanish at work or around her co-workers. App. 399a. DeVose denies asking if Paradoa was Hispanic. App. 155a. Following her investigation, DeVose recommended to Joanne Strauss that Paradoa's employment be terminated. App. 154a.

Joanne Strauss determined that Paradoa's conduct violated multiple PHA policies. First, PHA's "Non-Fraternization Policy" prohibits employees from supervising those with whom they have a close relationship, and the policy's definition of "close relationship" includes first cousins. App. 248a. Second, the Human Resources Policy Manual in effect from 1999 to 2012 – the period when Paradoa was employed – defined an employee's direct supervision of a relative as a conflict of interest and charged supervisors to notify Human Resources whenever an assignment created such a conflict. App. 321a-322a. Third, Section 5.2 of PHA's Workplace Management Policy warns that bullying will result in discipline up to and including termination. App. 266a. As punishment for violating these policies, Strauss terminated Paradoa's employment. App. 132a.

Paradoa responded by this lawsuit. In March 2014, PHA moved for summary judgment. The District Court granted that motion. Paradoa timely appealed.

3

II.[1]

We review grants of summary judgment de novo. Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013). Summary judgment is appropriate when no genuine issues of material fact are presented, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We resolve all factual doubts and draw all reasonable inferences in favor of the non-moving party. DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir. 2007).

III.

Race discrimination claims under Title VII, 42 U.S.C. § 1981, and the PHRA are, in the absence of direct evidence of discrimination, subject to the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employment action. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate, nondiscriminatory reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id.

To establish a prima facie case for discrimination under Title VII, 42 U.S.C. § 1981, and the PHRA, a plaintiff must show that (1) she is a member of a protected class,

___

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

(2) she was qualified for the position she sought to attain or retain, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013). Only the final element is under dispute in this case.

Paradoa argues that two circumstances of her termination give rise to an inference of discrimination. First, PHA has shown little evidence that Paradoa knew about and violated its anti-nepotism policies. Second, DeVose asked during her investigation if Paradoa was Hispanic.

Even if these statements were true, they would not be sufficient evidence of discrimination to survive summary judgment. PHA is not required to show evidence that it had a legitimate, non-discriminatory reason for terminating Paradoa until after she has established her prima facie case. If Paradoa could meet that burden by arguing her adversary had not produced its evidence yet, it would upend McDonnell Douglas's burden-shifting framework. Moreover, even positive evidence that PHA's stated reason for firing Paradoa was a pretext would not be evidence that the real reason was discriminatory unless it was paired with some other evidence of racial bias – for example, evidence that non-Hispanic employees were treated differently or that Paradoa was the only Hispanic person on staff.

Paradoa has no such evidence here. The record shows that DeVose was asking Paradoa about her use of the Spanish language because she was investigating claims that

5

Paradoa bullied her co-workers in Spanish. See App. 139a-140a, 150a. A further question about Paradoa's nationality – as opposed to her language ability – might have been irrelevant, but it does not suggest racial animus. See Takele v. Mayo Clinic, 576 F.3d 834, 839 (8th Cir. 2009) (holding mere references to nationality did not suggest discriminatory animus without resorting to speculation). "[S]peculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." Adeniji v. Admin. for Child. Servs., 43 F. Supp. 2d 407, 423 (S.D.N.Y. 1999); see also Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (speculation not sufficient to withstand summary judgment).

Paradoa has failed to present evidence from which an inference of discrimination can be drawn and so cannot make out a prima facie case.

IV.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of Philadelphia Housing Authority.