# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3310

_____

Beverly Burkett

*Plaintiff - Appellant*

v.

Department of Agriculture, George Ervin "Sonny" Purdue III, Secretary, successor
to Thomas J. Vilsack

*Defendant - Appellee*

Linda Newkirk, Executive Director, State of Arkansas for the U.S. Department of
Agriculture Farm Service Agency, individually and in her official capacity; David
Curtis, as successor to Linda Newkirk, Executive Director, State of Arkansas for
the U.S. Department of Agriculture Farm Service Agency

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: September 22, 2021
Filed: November 5, 2021
[Unpublished]

_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

_____

PER CURIAM.

A jury found in favor of the United States Department of Agriculture (USDA) on Beverly Burkett's claims of race discrimination and retaliation in her wrongful termination action brought pursuant to Title VII of the Civil Rights Act of 1964. On appeal, Burkett argues that the district court[1] erred in granting the USDA's motion in limine to exclude certain evidence at trial. We affirm.

I. *Background*

A. *Facts*

Burkett began her employment with the USDA in 1987 as a grade 2 office clerk. In 1995, Burkett applied for the position of program technician in Jefferson County, Arkansas. She was not selected for the position. Burkett subsequently filed an equal employment opportunity (EEO) administrative complaint. In 2000, an administrative judge found that Burkett was discriminated against based on her race and ordered the USDA to place her in the position of program technician (2000 decision).

In 2001, Burkett applied for the "Farm Loan Officer Trainee (FLOT), GS-5/9/11 position" advertised under "Vacancy Announcement Number AR-286-2001 for a position as a Loan Assistant/Specialist (Agricultural), GS-1165-5/7/9." R. Doc. 29-2, at 32. In 2004, an administrative judge found that the USDA discriminated against Burkett based on reprisal when it did not select her for the position (2004 decision). The administrative judge ordered the USDA to "offer Burkett placement in the first available Loan Assistant/Specialist (Agriculture) position, at the level for which she is qualified (or substantially equivalent position) in the Arkansas area." *Id.* at 45. As part of the USDA's placement of Burkett in that position, the administrative

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

judge ordered the USDA to "provide the appropriate training for the position to Burkett." *Id.* at 46.

In accordance with the administrative judge's 2004 decision, the USDA "offer[ed] [Burkett] the position of Farm Loan Officer (FLO), GS-11-3, without loan approval authority and requiring initial service as a Farm Loan Officer Trainee (FLOT), in the Jefferson County, Pine Bluff, Arkansas FSA[2] office." R. Doc. 29-3, at 10. The offer of employment provided that the "FLOT training will provide the knowledge, skills, and abilities to perform the job at the level required to achieve loan approval authority, which [was] required in order for [Burkett] to maintain [her] FLO position." *Id.* Burkett's acceptance of the offer "required [her] to successfully complete all training for the position." *Id.* The USDA gave Burkett "12 months from the date of orientation to satisfactorily complete all training and testing requirements of the position." *Id.* Burkett accepted the position and was placed in it in April 2005.

The FLOT program consists of two phases: Phase I and Phase II. Burkett completed Phase I in July 2007, which required her to participate in coordinated financial assessment training, take program area tests, and pass a comprehensive exam. Burkett then proceeded to Phase II. "Phase II was a long docket phase . . . when the trainee would . . . independently work up and submit dockets for review . . . ." R. Doc. 104, at 63. "The dockets . . . turned in for [the trainee's] . . . grade ha[d] to be independently completed" and receive a passing score of 90 percent. *Id.* at 92. To complete Phase II, Burkett could submit ten loan dockets and had to receive a passing score on five of the ten submitted dockets.

Some time after July 2007, Burkett began submitting loan dockets for review. FLOT Coordinator Dennis Stephens initially graded Burkett's loan dockets. After Stephens failed three of Burkett's loan dockets, Burkett filed an EEO complaint

---

[2]"FSA" stands for "Farm Service Agency."

(2008 complaint). She alleged that Stephens was unfairly grading her loan dockets, that Stephens retaliated against her because he was the subject of a prior EEO complaint, and that she was not afforded the same treatment as other employees because her loan dockets were not graded by an independent third party in Washington, D.C. Ultimately, Burkett "submitted 10 [loan dockets], but only 2 met the minimum standards and passed review." R. Doc. 29-4, at 24.

In July 2009, Burkett and the USDA entered into a settlement agreement that settled all issues in the 2008 complaint, as well as another complaint filed in 2006 (2006 complaint) concerning Burkett's training and testing. As part of the settlement, the USDA agreed to "[s]end all of [Burkett's] remaining Farm Loan Trainee Dockets, heretofore graded/judged as 'not passed,' to qualified FSA Farm Loan personnel in a state other than Arkansas for review and evaluation." *Id.* at 8.

In accordance with the settlement agreement, the three loan dockets that Stephens failed and all Burkett's future loan dockets were sent for review and grading to Farm Loan Program Chief Phil Estes in Oklahoma City, Oklahoma. Estes used the Arkansas checklist when reviewing Burkett's dockets. Estes did not "know Beverly Burkett," "know her race," or "know if she had any prior EEO activity." R. Doc. 104, at 92. Estes had never spoken to anyone in the Arkansas FSA office about Burkett. Estes never saw Stephens's grading of Burkett's loan dockets; the graded loan dockets were not part of the file that Estes received.

"Prior to the Oklahoma reviews, [Burkett] had successfully completed and passed only 2 loan docket reviews." R. Doc. 29-4, at 24. Therefore, she needed Estes to pass three more of her loan dockets. In a letter dated March 8, 2010, Burkett received notice that the first three submitted loan dockets "failed to meet the minimum requirements to pass review by the independent review state (Oklahoma)." *Id.* A separate letter sent on that date advised Burkett that she was receiving "an additional 120 days . . . to submit the required number of loan dockets for review."

*Id.* On August 18, 2011, and August 26, 2011, Estes received three additional loan dockets. Again, "all 3 [loan dockets] failed to meet the minimum credit quality requirement." *Id.* At that point, "[s]ix loan dockets [that] were submitted to Oklahoma" failed to satisfy "the minimum credit quality requirements necessary to pass, making it mathematically impossible for [Burkett] to pass 5 of the 10 with only 2 remaining." *Id.*

Despite it being "mathematically impossible for [Burkett] to submit enough loan dockets to pass Phase II," on May 8, 2012, Vanessa Moore, Burkett's supervisor, placed her on an Opportunity to Improve (OTI) plan to obtain loan approval authority. R. Doc. 102, at 163. During the OTI, Burkett could submit a maximum of four loan dockets; she had to pass three of them. The OTI was originally for 90 days, ending on August 7, 2012. But that date was ultimately extended to May 4, 2013. During the OTI, Burkett submitted three loan dockets; these last three loan dockets that Estes graded received scores of 62 percent, 68 percent, and 59 percent. Burkett failed to achieve the required improvement under the OTI. In total, Estes failed all nine of the loan dockets that Burkett submitted.

Because Burkett was unable to pass the required five loan dockets to obtain loan approval authority, District Director Larry Segars issued a notice of proposed removal to Burkett for failure to obtain loan approval authority. This notice listed the nine loan dockets that Estes failed. Burkett replied to the notice, which State Executive Director Linda Newkirk reviewed. Newkirk decided to terminate Burkett after taking into consideration the amount of time that Burkett received to complete the training, the assistance and opportunities Burkett received to submit the loan dockets, and the nine failed loan dockets that Burkett submitted.

B. *Procedural History*

After her termination, Burkett filed an EEO complaint alleging race and age discrimination and retaliation. After receiving a final agency decision finding of no

discrimination, she appealed to the Merit Systems Protection Board (MSPB) on the race discrimination and retaliation claims. An administrative judge thereafter issued an initial decision affirming the USDA's action and finding that Burkett failed to establish that her termination was based on race or retaliation for her protected EEO activity.[3] Burkett subsequently filed a complaint in district court seeking review of the MSPB's ruling.

In her pretrial disclosures, Burkett identified excerpts from the 2004 decision as an exhibit. Prior to trial, the USDA filed a motion in limine to exclude these excerpts and suggested a stipulation of the relevant facts from that decision. The USDA also moved to exclude all documents and evidence relating to the 2006 complaint and 2008 complaint. The district court granted the government's motion "to exclude excerpts from the 2004 EEOC decision" and "to exclude all documents and evidence related to the [2006 complaint] and [2008 complaint]." R. Doc. 72, at 1.

Prior to opening statements at trial, Burkett proffered the *entire* 2004 decision as Exhibit 1. The USDA objected to its admission and again suggested that the parties stipulate to the relevant language. The district court overruled the USDA's objection. But the district court directed that Burkett must "lay a foundation for [Exhibit 1]" and therefore did not receive Exhibit 1 into evidence at that time. R. Doc. 102, at 33. During Newkirk's testimony, Burkett introduced the 2004 decision as Exhibit 1; the government did not object, and the district court admitted the exhibit into evidence. Thereafter, Burkett testified about the 2004 decision and the underlying facts.

Also during trial, the district court revisited its ruling on the motion in limine to exclude the 2008 complaint. Despite the settlement agreement's language that Burkett's loan dockets would be sent to "a state other than Arkansas" for grading,

---

[3]Burkett did not pursue her age discrimination claim before the MSPB.

R. Doc. 29-4 at 8, Burkett wanted to discuss at trial why the USDA did not send her loan dockets to Washington, D.C., like it sent "the rest of them," R. Doc. 103, at 15. The parties also discussed Burkett's plan to question Stephens about his alleged unfair grading of Burkett. Ultimately, the district court ruled that Burkett could testify that she thought her loans would be sent to Washington, D.C., for grading. Additionally, the district court informed the jury that the parties had stipulated to certain facts, stating, "The stipulation reads that Ms. Burkett submitted loan dockets for grading. After they were graded, she complained that her dockets were unfairly graded. The parties settled the issue by agreeing to have her dockets independent[ly] reviewed by FSA personnel in a state other than Arkansas." *Id.* at 40. Thereafter, Burkett testified that her "understanding" when she entered the settlement agreement was that her loan dockets would go "[t]o the national office in Washington, D.C." but they instead went to Oklahoma. *Id.* at 114.

Burkett never called Stephens as a witness. Instead, Burkett's counsel asked her to "relate her disagreement with his assessments" of her loan dockets. R. Doc. 104, at 138. The government objected. In response, Burkett's counsel explained that Burkett had "correspondence to Dennis Stephens where she . . . complain[ed] to Dennis about the grading." *Id*. at 140. Specifically, Burkett "point[ed] out errors she didn't even commit, asking him to review [them]." *Id.* at 141. The court, however, noted that "the problem" for Burkett was that "[h]er termination was not based on Dennis's grading." *Id.* Instead, Burkett "was terminated based on the files that were submitted to Oklahoma." *Id.* The court explained that Burkett "could disagree with Dennis all day, but that is not why" Burkett was terminated. *Id.* Instead, it was Estes who failed nine of Burkett's loan dockets. According to the court, the relevant question was whether Estes "kn[e]w the grades that came from Dennis" and whether Estes engaged in "an independent review" of Burkett's loan dockets. *Id.* The court sustained the government's objection to Burkett's correspondence with Stephens. The court advised Burkett's counsel to focus on whether Estes—not Stephens—fairly graded Burkett's loan dockets.

At the end of the trial, the jury returned a verdict in favor of the USDA on both the race discrimination and retaliation claims.

## II. *Discussion*

On appeal, Burkett argues that the district court erred in "excluding two important components of evidence: Background evidence surrounding the 2004 EEOC decision resulting in [Burkett's] farm loan officer position from which she was terminated, and any evidence relating to the [2008 complaint]." Appellant's Br. at 12. Burkett maintains that "[t]he district court's rulings on the evidence unfairly prevented [her] from challenging the 'other reasons' defense" and denied her "the opportunity to properly attack the circumstances used by the USDA to fire her—the grading of loan dockets." *Id.* at 13.

"We review a district court's ruling on a motion in limine for abuse of discretion." *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1034 (8th Cir. 2013).

First, Burkett has not identified what evidence the district court excluded concerning the 2004 decision. While the district court granted the government's pretrial motion in limine to exclude *excerpts* of the 2004 decision, the district court later received into evidence during trial the *entire* 2004 decision as Exhibit 1. Thereafter, Burkett testified about the decision and underlying facts. We conclude that the district court did not abuse its discretion in excluding excerpts of the 2004 decision in its pretrial ruling when it later admitted, on Burkett's motion, the entire decision into evidence during trial.

Second, the district court did not abuse its discretion in granting the government's motion in limine to exclude evidence relating to the 2008 complaint. Estes—not Stephens—failed the nine loan dockets identified as the basis for Burkett's termination. Burkett's counsel cross-examined Estes about his grading of Burkett's loan dockets. Estes testified that he never saw Stephens's grading of

Burkett's loan dockets and that the graded loan dockets were not part of the file that he received. Additionally, Estes testified that he never spoke with anyone at FSA in Arkansas about Burkett. The record contains no evidence to the contrary.

Furthermore, the district court did not exclude *all* evidence relating to the 2008 complaint. After the district court revisited its ruling on the motion in limine, the parties stipulated that Burkett "complained that her dockets were unfairly graded" and that "[t]he parties settled the issue by agreeing to have her dockets independent[ly] reviewed by FSA personnel in a state other than Arkansas." R. Doc. 103, at 40. Thereafter, Burkett testified that her "understanding" when she entered the settlement agreement was that her loan dockets would go "[t]o the national office in Washington, D.C." but they instead went to Oklahoma. *Id.* at 114.

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____